UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

```
* * * * * * * * * * * * * *
UNITED STATES OF AMERICA,    * CRIMINAL NO. 7:24-CR-00031
                             * OCTOBER 21, 2024  9:32 A.M.
               Plaintiff,    * SENTENCING HEARING
                             *
vs.                          *
                             *
RICHARD WALKER,              * Before:
                             * HONORABLE DONALD C. COGGINS, JR.
                             * UNITED STATES DISTRICT JUDGE
               Defendant.    * DISTRICT OF SOUTH CAROLINA
* * * * * * * * * * * * * *
```

APPEARANCES:


For the Plaintiff:        JAMIE L. SCHOEN, AUSA
                          United States Attorneys Office
                          55 Beattie Place, Suite 700
                          Greenville, SC  29601


For the Defendant:        LORA BLANCHARD, ESQUIRE
                          Federal Public Defenders Office
                          75 Beattie Place, Suite 950
                          Greenville, SC  29601



Court Reporter:           Michele E. Becker, RMR, CRR, RPR
                          250 E North Street
                          Greenville, SC  29601
                          (864) 905-8888



Proceedings recorded by mechanical stenography, transcript
produced by computer.

1  (Court convened at 9:32 a.m.)

2  (Excerpts not transcribed at request of counsel.)

3          **THE COURT:**  Ms. Schoen.

4          **MS. SCHOEN:**  Yes, Your Honor.  This is United States

5  versus Richard Brian Walker 7:24-31.  Mr. Walker is present

6  and represented by his attorney, Ms. Lora Blanchard and we're

7  here for sentencing.

8          **THE COURT:**  All right.  Ms. Blanchard, I have

9  reviewed the file with respect to the indictment and the

10  counts Mr. Walker has pled to.  I have reviewed the

11  preliminary order of forfeiture with respect to that property,

12  the presentence investigation report, and your motion for a

13  downward variance with sentencing memorandum, as well as

14  letters attached to that.  Are there any other written

15  submissions?

16          **MS. BLANCHARD:**  No, Your Honor.

17          **THE COURT:**  Anything else in writing from the

18  government?

19          **MS. SCHOEN:**  No, Your Honor.

20          **THE COURT:**  All right.  Ms. Blanchard, with respect

21  to the presentence investigation report, have you had an

22  adequate opportunity to review the report and go over it with

23  Mr. Walker?

24          **MS. BLANCHARD:**  Yes, Your Honor.

25          **THE COURT:**  Have you fully explained it to him and

3

1  answered any questions he had concerning it?

2          MS. BLANCHARD:  I have.

3          THE COURT:  And do you believe he understands it?

4          MS. BLANCHARD:  Yes, Your Honor.

5          THE COURT:  Thank you.  Madam Clerk, would you place

6  the defendant under oath.

7          THE CLERK:  Sir, please stand, raise your right hand

8  and state your name for the record.

9          THE DEFENDANT:  Richard Brian Walker.

10          (Whereupon, the defendant is duly sworn on oath.)

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  Thank you, sir.  Mr. Walker, have you

13  had a sufficient opportunity to review the presentence

14  investigation report in your case and go over it with your

15  attorney?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Has Ms. Blanchard explained it to you

18  and answered any questions you had concerning it?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Do you believe you understand it?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Do you need any additional time to

23  review the report or confer with Ms. Blanchard about it?

24          THE DEFENDANT:  No, sir.

25          THE COURT:  Are you ready to proceed?

1    **THE DEFENDANT:**  Yes, sir.

2    **THE COURT:**  All right.  Thank you, sir.

3    Ms. Blanchard, with respect to the report I think

4    you had a number of objections.  Where are we on those?

5    **MS. BLANCHARD:**  Your Honor, I believe that we have

6    resolved those objections.  With regard to objections 1 and 2,

7    I believe that we have agreed with the government that instead

8    of 50 and 50, it should just be one 50-kilogram weight.

9    Unfortunately that doesn't make a difference as to the drug

10   numbers, but we've come to that resolution if the Court is

11   okay with that.

12   **THE COURT:**  All right.  Just for the record, as I

13   understand it, the objection was essentially to a double

14   counting of the 50 kilograms of meth, and that was reflected

15   in the amount acknowledged in paragraph 33 of the report where

16   it double counted in paragraph 56 of the report; is that

17   correct?

18   **MS. BLANCHARD:**  That's correct, Your Honor.

19   **THE COURT:**  All right.

20   **MS. BLANCHARD:**  And then, Your Honor, with regard to

21   objection number 3, I believe that we have come to an

22   agreement with the government.  While they submit that it was

23   correctly calculated and put on there, they are not -- they

24   have no opposition to our objection that the two-level

25   increase should not apply to the stash house.

5

1          THE COURT:  All right.  Is that right, Ms. Schoen?

2          MS. SCHOEN:  Yes, Your Honor.  As Ms. Blanchard

3    stated, the government believes that the PSR is correct and

4    was correctly calculated.  However, we are talking about very

5    very high numbers as the Court is well aware.  And a two-level

6    reduction given the totality of the circumstances, that would

7    be a level 35 total offense level.  The government -- and then

8    you have the 924(c) on top of that.  The government believes

9    that those numbers would satisfy the purposes of punishment

10   under Rule 3553(a), so we're not putting up a witness and

11   we're fine with that two levels coming out.

12          THE COURT:  All right.  Just trying to make sure we

13   keep the record straight here.  As to objections 1 and 2,

14   those objections are essentially going to be treated as

15   sustained because of the double counting.  And the PSR will be

16   amended to reflect that decrease in 50 kilograms of meth.  As

17   to number 3 and the stash house, you agree that it was

18   appropriately written, so I'm not going to require any

19   amendment to the PSR.  However, the government does not object

20   or concedes the two-point difference in the guideline on the

21   stash house enhancement because it's essentially not going to

22   have any ultimate effect on the guidelines; is that right?

23          MS. SCHOEN:  Your Honor, it will have an impact on

24   the guidelines.  I believe probation may have already looked

25   at the amount that would be -- I don't have it right on hand,

1    but I believe that the two-level reduction is appropriate.  So

2    whether we handle it via a variance or we handle it by

3    agreement.

4              THE COURT:  I think the easiest way to do it is to

5    handle it by variance, and so Ms. Blanchard, on your variance

6    motion, you got two levels to start with.

7              MS. BLANCHARD:  Okay.

8              THE COURT:  Okay.  And we'll go from there.

9    Ms. Pagan, I'm just trying to keep the record as simple as I

10   can.  Will that work from probation's standpoint?

11             PROBATION OFFICER:  Yes, sir.  As far as with the

12   drug weight, the double count, that's already been addressed

13   and then with the two-level removal that would change his

14   guideline range.  And when it's appropriate, I'll advise the

15   Court on that guideline range.

16             THE COURT:  Let's go head and talk about that.

17             PROBATION OFFICER:  Yes, sir.

18             THE COURT:  When you take out the two points for the

19   stash house enhancement, which I'm going to grant as a

20   variance since the government is not contesting it, what does

21   that do for us?

22             PROBATION OFFICER:  So, his total offense level will

23   be reduced to 35.  His guideline range will be 235 to 293.

24   Plus the 60 months, the consecutive 60 months, it will be a

25   total of 295 months to 353 months.

1          **THE COURT:** Okay. So 295 to 353 three.

2          **PROBATION OFFICER:** Yes, sir.

3          **THE COURT:** All right. With respect to the change

4    in the drug weight based on the 50 kilograms, and also because

5    I want to treat Mr. Walker the same as I'm treating the other

6    defendants to the extent that any of his was ice, which I

7    believe in paragraph 57 it was. If we -- if we change that

8    and treat it all as meth, if the numbers we came up with are

9    correct, then in 57, paragraph 57 on page 16, the total amount

10   of methamphetamine is going to be 54,512 grams; is that right?

11         **MS. SCHOEN:** That is correct.

12         **THE COURT:** And then if we come down to paragraph

13   60, that's going to change his converted drug weight to

14   109,272 kilograms?

15         **PROBATION OFFICER:** That is correct, sir.

16         **THE COURT:** Now, you told me about two levels on the

17   stash house enhancement taking us down to a 35. Does that

18   change in converted drug weight have any additional effect on

19   his total offense level?

20         **PROBATION OFFICER:** No, Your Honor.

21         **THE COURT:** I didn't think so based on the ranges

22   and the drug table, but I just wanted to confirm that.

23         **PROBATION OFFICER:** Yes, sir.

24         **THE COURT:** All right. Thank you.

25         All right. Ms. Blanchard, any other objections?

1          **MS. BLANCHARD:**  No, Your Honor.

2          **THE COURT:**  Any objections from the government?

3          **MS. SCHOEN:**  No, Your Honor.

4          **THE COURT:**  All right.  Hearing no further

5     objections based upon the Court's rulings as just announced,

6     the Court will adopt the presentence investigation report as

7     amended as the finding of facts for purposes of this

8     sentencing hearing and the record will so reflect.

9          Now, Mr. Walker pled guilty to count 1, count 7,

10    counsel 8, count 9, and count 10 of the indictment.  Count 1

11    is for conspiracy to possess with intent to distribute

12    methamphetamine and fentanyl in violation of Title 21 United

13    States Code Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B),

14    and 846.

15         Count 7 is for possession with intent to distribute

16    methamphetamine and fentanyl.  Again, in violation of 21

17    U.S.C. Sections 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B).

18         Count 8 is for felon in possession of a firearm and

19    ammunition in violation of Title 18 United States Code

20    Sections 922(g)(1), 924(a)(8), 924(e).

21         Count 9 is to possession of a short barrel rifle in

22    violation of Title 26 United States Code Sections 5 -- excuse

23    me, 5861(i) and 5871.

24         And finally, count 10 is for possession of a firearm

25    in furtherance of a drug trafficking crime in violation of

1    Title 18 United States Code Section 924(c)(1)(A).

2           Guideline -- excuse me, statutory provisions and

3    guideline provisions applicable in Mr. Walker's case with

4    respect to the statute as to a period of custody, count 1 is

5    ten years to life, count 7 is ten years to life, count 8 is

6    not more than 15 years, count 9 is not more than ten years.

7    Count 10 is five years to life consecutive to all other

8    counts.  Supervised release of count 1 -- excuse me, as count

9    1 is at least five years.  Count 7 is at least five years.

10    Count 8 is not more than three years.  Count 9 is not more

11    than three years.  Count 10 is not more than five years.  He

12    would be statutorily ineligible for a sentence of probation.

13    The fine applicable in this case as to count 1 is $10 million.

14    As to count 7, $10 million.  As to count 8, $250,000.  As to

15    count 9, $10,000, and as to count 10, $250,000, for a total of

16    $20,510,000.

17           Special assessment fee of $100 is applicable to all

18    five counts for a total of $500.  Guideline provisions as

19    previously discussed, his total offense level is a 35,

20    criminal history category is a four.  Again, he's ineligible

21    for probation.  His guideline range for imprisonment would be

22    235 to 293 months, plus 60 months consecutive as to count 10

23    for a total of 295 to 353 months.  Five years supervised

24    release.  No fine has been calculated due to inability to pay.

25    Restitution is not applicable.  And there is the 500-dollar

1    special assessment fee.

2         Are there any objections or exceptions to the

3    Court's statement of the applicable statutory provisions and

4    guideline provisions from the government?

5         **MS. SCHOEN:**  No, Your Honor.

6         **THE COURT:**  Any from the defense?

7         **MS. BLANCHARD:**  No, Your Honor.

8         **THE COURT:**  All right.  Ms. Schoen, I'll hear from

9    you first.

10        **MS. SCHOEN:**  Yes, Your Honor.  The government

11   believes that a very significant sentence is warranted in this

12   case to satisfy the purposes of punishment.  Specifically,

13   Mr. Walker had been identified as a multi kilogram

14   methamphetamine distributor.  Surveillance was taking place at

15   his residence, and an individual was observed coming up to

16   that residence.  That individual left and was found in a

17   traffic stop with guns, methamphetamine, and drug -- guns and

18   drugs, and had stated he had just delivered 4 kilograms of

19   methamphetamine to Mr. Walker.  A search warrant was conducted

20   at Mr. Walker's house, and fentanyl and methamphetamine were

21   found there in the storage building.  There were guns and

22   drugs in his room.  There were guns and drugs.  The guns in

23   question were a green colored pistol of some sort that was

24   loaded, and that's in paragraph 42.  And then in paragraph 43

25   he had a Tactical rifle and unmarked short barrel AR15 style

1    rifle.  Law enforcement calls these type of firearms "Ghost

2    Guns."  Their manufacture cannot be attributed and they do not

3    have serial numbers.  The risks -- Mr. Walker admits that he

4    has been distributing 50 kilograms of methamphetamine.  His

5    history, he was on probation at the time of this offense.

6          As the Court is well aware, these are incredibly

7    serious crimes.  Fentanyl and methamphetamine are a scourge on

8    our society, killing our citizens, taking away members of

9    families and employees to be productive citizens.  They also

10    are -- this also is incredibly dangerous given the guns in

11    question, and the ghost gun specifically.  Mr. Walker has a

12    prior criminal history of domestic violence including domestic

13    violence, burglary, possession with intent to distribute

14    methamphetamine, and as I think I stated before, he was on

15    probation at the time.

16          So, unfortunately, Mr. Walker has been given an

17    opportunity to change.  As I believe may come up later on,

18    he's been given a couple of opportunities to change, and he

19    has chosen not to do so.  So therefore in order to protect the

20    public from future crimes of Mr. Walker and to promote

21    deterrence, specifically, and incapacitation for Mr. Walker

22    under a note of seriousness and to reflect the seriousness of

23    the offense, the government believe's a guideline sentence is

24    appropriate.

25          **THE COURT:**  All right.  Ms. Blanchard.

1      **MS. BLANCHARD:**  Thank you, Your Honor.  I do have

2  one issue I'd like to address that may be appropriate for us

3  to go in camera if the Court is okay with that.  There's just

4  something kind of very brief.  It does not -- if you are okay

5  with doing that.

6      **THE COURT:**  All right.  I don't see anyone who's not

7  court personnel in the courtroom.  So I don't see any need to

8  seal the courtroom.  But we will on the record go in camera at

9  this time so I can hear the grounds for your motion for an in

10 camera proceeding.

11     **MS. BLANCHARD:**  Thank you, Your Honor.

12     **THE COURT:**  Ms. Blanchard.

13     **MS. BLANCHARD:**  When Mr. Walker was first arrested,

14 he was given -- he gave a post arrest interview without the

15 benefit of a lawyer.  It was not under proffer.  So we're in a

16 situation where the government is now using that testimony

17 against him.  So he has cooperated to the extent that he has

18 provided information about himself that is now being used

19 against him.  But because of the situation and because of his

20 fear of continuing to cooperate moving forward, we're not in a

21 position where the government would be asking him for a --

22 asking for a 5K motion.  But we're asking that you consider

23 that he did give that statement post arrest in determining

24 what his sentence should be.

25     **THE COURT:**  All right.  Ms. Schoen, would you like

1    to be heard?

2         **MS. SCHOEN:**  Yes, Your Honor.  The government has no

3    opposition with the in camera proceedings.  And the context of

4    where we are, I think it's just important to have as well.

5    Mr. Walker was cooperating with law enforcement at the time

6    this event occurred.  So he was trying to cooperate in -- what

7    date are we at?  In January of 2023, and then he continues.

8         **THE COURT:**  There were some other activity after.

9         **MS. SCHOEN:**  Right.  We end up here where he is

10   distributing and obtaining kilogram quantities of

11   methamphetamine.  So the government does appreciate and

12   doesn't want to make light of any attempt that a person had to

13   cooperate.  However, the context of this is not a good context

14   to be in when you are trying to cooperate and then you are

15   distributing kilograms, transporting kilograms, receiving

16   kilograms of methamphetamine, isn't a good place to be.

17        **THE COURT:**  All right.  Keep this from becoming too

18   jumbled.  First of all, I do find there's good ground for the

19   in camera proceedings, so that motion is granted with respect

20   to the substance of the presentation.

21        Ms. Blanchard, anything else?

22        **MS. BLANCHARD:**  No, Your Honor.

23        **THE COURT:**  All right.  There not being any further

24   need for in camera proceedings, we will go back on the record

25   at this point, and Ms. Blanchard, I'll be happy to hear from

1   you.

2        **MS. BLANCHARD:**   Thank you, Your Honor.   Mr. Walker

3   has accepted responsibility for his actions in this case.

4   Unfortunately this was a situation where it was cooperate or

5   you get nothing, and so he ended up pleading to every count of

6   the indictment.   He has been in custody since February of

7   2023, so he's been at this point about 20 months in custody,

8   which is the longest he's ever been in custody.   Even a

9   sentence of 15 years, which is the mandatory minimum, would be

10  longer than he has ever served in custody.

11       As I set forth in the motion, he grew up with his

12  mother and his father who was an alcoholic.   He at times was

13  afraid that his father was going to hurt his mother.   Very

14  close to her.   After his father passed away, he remained in

15  the home with her.   She had a stroke.   He took care of her so

16  that she would not have to go into a nursing home.   She passed

17  away in October of 2018.   And when you look at his criminal

18  history, up until that point it was relatively minor.   He

19  still was a convicted felon at this point.   But there wasn't a

20  whole lot of activity.   And then we go to paragraph 72, 2019,

21  he was arrested with burglary.   He was sentenced to that in

22  2020.   And then he was also charged in 2020 with possession

23  with intent to distribute methamphetamine.

24       The government said that he had been given a chance

25  before.   I don't know that he really was given a chance

1    before.  He was sentenced in 2020, began probation in 2021,

2    and then has another conviction in 2023 but for conduct that

3    happened in 2020.  He did not handle the death of his mother

4    well.  He went from using drugs recreationally and drinking to

5    getting drunk and high every night.  It's that conduct that

6    led him here to having large quantities and dealing to support

7    his habit.  He did serve time at the South Carolina Department

8    of Corrections when he came into custody -- or when he came up

9    for his initial appearance he was still in state custody.  He

10   choose to go back to SCDC so that he could complete alcohol

11   addiction treatment.

12            THE COURT:  Did he complete that sentence?

13            MS. BLANCHARD:  He did complete that sentence.  And

14   so part of that was that he completed substance abuse

15   treatment at the Addiction Treatment Unit, the ATU at

16   Turbeville Correctional.  So he was able to complete that.  He

17   does want to complete programming and drug treatment moving

18   forward.  He wants to be better when he gets out, and

19   programming is one of the ways that he knows that he can do

20   that.

21            He does have a good relationship with his son Dillon

22   who's 27.  We were hoping he was going to show up, but he's

23   not here yet.  So that's kind of where we are with this.

24            He's looking at a lot of time.  And no matter what

25   sentence you give him, he will be significantly older.  He's

1  49 now, and he will be in a completely different situation.

2  He has been forced to deal with both his drug use and the loss

3  of his mother.  I don't know that he's completely dealt with

4  that, but he certainly started that process.  And that's

5  something that he'll have to continue to deal with when he is

6  released.  And so I'm hopeful that he's able to get the tools

7  that he needs so that he could do that.

8         THE COURT:  All right.  Anything further from the

9  government before I hear from the defendant?

10         MS. SCHOEN:  No, Your Honor.

11         THE COURT:  All right.  Mr. Walker, you have the

12  right to address the Court prior to my making a final decision

13  on sentencing in your case.  You're not obligated to say

14  anything.  But if there's anything you want to tell me about

15  yourself, about this situation, about the facts and

16  circumstances surrounding this time period in your life, or

17  anything else that you think I should know in making this

18  decision, I'll be happy to hear from you.

19         THE DEFENDANT:  Yes, sir.  I mean, I just got caught

20  up in a bad situation at a bad time in my life.  Made poor

21  decisions.  Thought I was doing what I needed to do to support

22  my habit and take care of what I done need to take care of.  I

23  just hope that I can get out of prison not in a wheelchair or

24  even get out of prison.  I'm 49 years old.  Twenty-five years

25  is basically a life sentence for me.  I mean, I just -- I want

1   to try to put this behind me and get out and spend whatever

2   little time I got out of prison.  Hopefully have some

3   grandkids.

4           **THE COURT:**  All right.  Thank you, sir.

5           **THE DEFENDANT:**  Thank you.

6           **THE COURT:**  Anything else, Ms. Blanchard?

7           **MS. BLANCHARD:**  No, Your Honor.

8           **THE COURT:**  Ms. Schoen, anything else?

9           **MS. SCHOEN:**  No, Your Honor.

10           **THE COURT:**  And I will note as I had noted earlier,

11   I did read the letters from Mr. Vaughn, Mr. Meng -- I think

12   it's Mr. Meng -- and Mr. Walker.  I read the letter that you

13   sent me as well.

14           With respect to the sentencing decision, as I

15   explained at the time of the guilty plea, Mr. Walker, we're

16   required to determine the United States sentencing guidelines

17   that apply to your case and then determine if there is any

18   basis, legal basis for a departure either down or up.  And

19   then likewise from a factual basis under the facts and

20   circumstances of your situation, is there any basis for a

21   variance either downward or upward.

22           With respect to any legal ground for departure, I

23   don't find any nor has counsel asked for a departure.

24   Ms. Blanchard has asked for a downward variance on your

25   behalf.  And to the extent that the government has conceded on

1    the stash house enhancement, that downward variance of two

2    levels has already been granted.  With respect to the argument

3    in the sentencing memorandum about not only your difficult

4    upbringing but also the stress of the loss of your mother, as

5    well as the attempts at cooperation, it seems to me that while

6    I don't doubt the reliability of any of that information, that

7    you did have a difficult upbringing and it had a profound

8    effect on you as you moved into adulthood, that the death of

9    your mother had a profound impact on you as the loss of a

10   parent does on all of us.  Some of us at younger ages than you

11   were.  Those are the type of things that typically people in

12   society handle every day without getting involved in large

13   scale drug trafficking and being armed while you're doing it.

14   That's a rather interesting -- that's a rather interesting way

15   to react to that.

16           I'm more impressed by your attempt to cooperate in

17   this case.  But I also understand what the government is

18   saying in that you're wanting to cooperate and hopefully get

19   some credit for it.  At the same time you're still elbow deep

20   in the activity, which kind of takes a little bit of the shine

21   off of the cooperation.  Perhaps what I'm most impressed about

22   is something that has not been significantly argued in the

23   written submissions, but Ms. Blanchard arguing it today and

24   you made reference to it as well, which is at 49 and about to

25   turn 50 in January, you're a little bit old for this

1    foolishness.  And by the time you get out, hopefully you'll be

2    old enough that you'll be too old for this foolishness.  I

3    hope that you'll be rehabilitated.  But even if you're not,

4    from the standpoint of protecting society and the community

5    and from the standpoint of deterring you, it may be that old

6    age and health does more than I can do in that regard.

7    Nevertheless, with the stash house enhancement removed, that

8    got you down to a level 35.

9         I'm going to grant the motion for a further variance

10   for another two levels down to a level 33, which I believe

11   with your criminal history category of a four puts us at 188

12   to 200, about 35 months.  Now, within that guideline range

13   taking into account as I must the seriousness of the offense

14   and the need for the sentence to impose just punishment and to

15   protect the public and all of those other factors, and also

16   the need to avoid unwanted sentencing disparities, I find that

17   a sentence in the somewhat middle of that range is appropriate

18   under the totality and facts and circumstances in this case.

19        So let me ask this before I pronounce sentence.

20   Ms. Blanchard, I note that we've had some folks join us.  I

21   just want to make sure before we conclude that no one else

22   wants to address the Court?

23             **MS. BLANCHARD:**  Let me check with that, Your Honor.

24        Your Honor, Mr. Walker's son is present.  Does want

25   you to know that he's present but has nothing to add at this

20

1    point.

2            THE COURT:  All right.  Thank you.

3            Ms. Schoen, anything else?

4            MS. SCHOEN:  Your Honor, I'm sure you're going to

5    get to this.  I just want to make sure so I can write it down.

6    33 and four is the guidelines on the 841, and then do we

7    have --

8            THE COURT:  We still have the 60 consecutive.

9            MS. SCHOEN:  Thank you, Your Honor.

10           THE COURT:  And I apologize for the lack of clarity

11   on that.  All right.

12           After having calculated and considered the advisory

13   sentencing guidelines and having also considered the relevant

14   statutory sentencing factors contained in Title 18 United

15   States Code Section 3553(a), as well as the arguments of

16   counsel both in written submissions and in the hearing today,

17   as well as the allocution testimony of the defendant and the

18   letters of reference or character reference letters previously

19   noted by the Court, it is the judgment of this Court that the

20   defendant, Richard Brian Walker, is hereby committed to the

21   custody of the Bureau of Prisons to be imprisoned for a term

22   of 210 months.  The term consists of 210 months as to counts 1

23   and 7, 180 months as to count 8, 120 months as to count 9.

24   All such terms to reason concurrently.  As to count 10 the

25   term of incarceration is 60 months which shall run consecutive

1    to all other counts.  That's a total of 270 months.

2            It appears the defendant does not have the ability

3    to pay a fine, therefore the fine is waived.  The defendant

4    shall pay the mandatory 500-dollar special assessment fee.

5    Upon his release from imprisonment the defendant shall be

6    placed on supervised release for a term of five years.  This

7    term consists of five years as to counts 1, 7, and 10, and

8    three years as to count 7 and 8.  All such terms to run

9    concurrently.

10           While he is on supervised release the defendant will

11   comply with all mandatory conditions of supervision outlined

12   in Title 18 United States Code Section 3583(d) and United

13   States Sentencing Guidelines Section 5D1.3(a), as well as the

14   standard or discretionary conditions outlined in United States

15   Sentencing Guidelines Section 5D1.3(c).  All as noted in

16   paragraph 134 and 137 of the presentence report which are

17   incorporated by reference herein.

18           Standard conditions of supervision 1 through 9 and

19   13 serve the statutory sentencing purposes of public

20   protection and rehabilitation pursuant to Title 18 United

21   States Code Section 3553(a)(2)(C) and (D).  Standard condition

22   of supervision 10 and 12 serve the statutory purpose of public

23   protection pursuant to Title 18 United States Code Section

24   3553(a)(2)(C).  Standard condition of supervision 11 ensures

25   that the defendant does not engage in activities that may

1   potentially conflict with the other conditions of supervision
2   and that may pose risk to the defendant's probation officer.
3       The defendant shall also comply with the following
4   special conditions for the reasons set forth in the
5   presentence report which has previously been adopted by this
6   Court as the finding of facts for purposes of this sentencing
7   hearing.  Those special conditions are as follows:  Number 1,
8   you must submit to substance abuse testing to determine if you
9   have used a prohibited substance.  Random drug testing is
10  being ordered in this case due to the nature of the incident
11  offense and the prior drug use of the defendant as indicated
12  in paragraphs 119 and 120 of the presentence report.  Such
13  drug testing will help assist the probation officer in
14  ensuring that the defendant remains in compliance with the
15  conditions of his supervision without being involved in the
16  use or possession of a controlled substance.
17      Number 2, you must contribute to the cost of such
18  testing program in an amount not to exceed that determined
19  reasonable by the court-approved United States Probation
20  Office's sliding scale for services, and you will cooperate in
21  securing any applicable third-party payment such as private
22  insurance or Medicaid.  This condition is being imposed to
23  help offset government testing, treatment, and referral
24  resource expense, as well as to increase the defendant's
25  personal investment in his or her treatment and other

1    services.

2              With respect to conditions of confinement, I

3    believe, Ms. Blanchard, you mentioned or it may have been

4    Mr. Walker mentioned that he would like additional drug

5    treatment.  And I will recommend to the Bureau of Prisons that

6    he be screened for and placed in an appropriate drug

7    rehabilitation treatment program with preference for the

8    Residential Drug Abuse Program known as RDAP.

9              With respect to facility assignment, given that

10   Mr. Walker has family in this area, I will recommend to the

11   Bureau of Prisons that he be assigned, if possible, to a

12   facility within the District of South Carolina in order to

13   facilitate family visitation, that is, for humanitarian

14   purposes.  Also will recommend to the Bureau of Prisons that

15   he be allowed to participate in such educational and

16   vocational training as he may be interested, particularly with

17   respect to his obtaining a GED or other educational

18   certification as may benefit him.

19             Now, I note that Mr. Walker has been in federal

20   custody since his arrest on January 25th, 2024.  I understand

21   that a part of that period of time was actually in state

22   custody?

23        MS. BLANCHARD:  That's correct, Your Honor.  I

24   talked to the Marshal's Office.  He has been in federal

25   custody since March 6th of 2024.  As of Friday that was 226

1    days.

2         THE COURT:  All right.  I'll make that finding as a

3    finding of fact on the record.  Obviously it is the Court's

4    position that with respect to time -- related to these charges

5    and not in the service of any other sentence, he should get

6    appropriate credit for that time served.  However, that is

7    uniquely the province of the Bureau of Prisons to calculate

8    that credit for time served.  But I will make that finding

9    with regard to that for that purpose and their use in making

10   that determination.

11        Now, I believe that I have calculated the advisory

12   guideline range properly and correctly addressed all the

13   points raised by the parties.  However, if it is later

14   determined that I have not, I will state for the record that I

15   would have imposed this same sentence as an alternate variance

16   sentence in light of all of the 18 U.S.C. Section 3553(a)

17   factors, and in light of the totality of the circumstances

18   present in this case.  And I'll state for the record that I

19   believe that this sentence is sufficient but not greater than

20   necessary to accomplish the purposes of sentencing under the

21   facts and circumstances of this case.

22        Are there any objections or exceptions to the form

23   of the Court's sentence from the government?

24        MS. SCHOEN:  No, Your Honor.

25        THE COURT:  Any from the defense?

1        **MS. BLANCHARD:**  No, Your Honor.

2        **THE COURT:**  All right.  Ms. Schoen, with respect to

3    the preliminary order of forfeiture, does the government wish

4    to have the Court incorporate that?

5        **MS. SCHOEN:**  Yes, Your Honor.

6        **THE COURT:**  We will do so.  And I don't believe that

7    there are any remaining counts as to this defendant; is that

8    correct?

9        **MS. SCHOEN:**  That's correct.

10       **THE COURT:**  All right.  Mr. Walker, with respect to

11   your conviction and sentence in this case, you have the right

12   to appeal those.  You specifically have the right to appeal

13   this sentence within 14 days from the entry of the written

14   judgment in your case.  That's likely to happen either later

15   today or tomorrow.  So to be on the safe side you would need

16   to file your written notice of appeal with the Clerk of Courts

17   office no later than two weeks from today.  I'm going to ask

18   Ms. Blanchard to go over those appeal rights with you today

19   before you leave so that you have a clear understanding of

20   exactly what you need to do.  I'm sure she's already talked

21   with you about that.  I'll ask her to talk with you about that

22   again.

23       Ms. Blanchard, let me ask you, are there any other

24   recommendations you'd like me to make to the Bureau of

25   Prisons?

1    MS. BLANCHARD:  No, Your Honor.

2    THE COURT:  Okay.  With respect to those

3  recommendations, Mr. Walker, the Bureau of Prisons typically

4  tries to accommodate whatever recommendations the Court makes.

5  However, there are other considerations such as space

6  availability, your security level, things having to do with

7  your offense, and what you were convicted of that may affect

8  that assignment to a location or your eligibility for certain

9  programs.  I don't think that will be a problem in this case.

10  And it's one of the reasons that I expanded it to the entire

11  District of South Carolina rather than a specific facility.

12  So hopefully they can accommodate that.

13        As you know or if you don't, I'm sure Ms. Blanchard

14  has told you, if you do well during your period of

15  incarceration you can earn significant time off your sentence

16  so that it is not quite as long as it seems at this point.

17  While you are well into middle age, I will tell you for those

18  of us who have put your age far in the rear view mirror, you

19  still are looking at having potentially a fair amount of

20  quality time when you get out.  I would encourage you to work

21  toward that, and I'd also encourage you as the saying goes,

22  "Bloom where you're planted."  Try to take advantage of the

23  time that you have even while you're incarcerated to better

24  yourself and to do things to build yourself up both in terms

25  of qualities you'll need upon your release but also your

1  character and self discipline, those type things that you can

2  work on.  There's no way to sugarcoat this or put lipstick on

3  this pig.  It's a lot of time.  And I don't want to try to

4  tell you that it's not.  But it's one of those things where

5  actions have consequences.  And I know that you're old enough

6  to understand that.  I simply wish you the best of luck.  All

7  right.  Anything further from the government?

8           **MS. SCHOEN:**  No, Your Honor.

9           **THE COURT:**  Anything further from the defense?

10          **MS. BLANCHARD:**  No, Your Honor.

11          **THE COURT:**  That will conclude this matter.  We'll

12  be in recess till our next hearing.

13      (Court recessed at 11:27 a.m.)

14

15                      CERTIFICATE

16      I,  Michele E. Becker, certify that the foregoing is

17          a correct transcript from the record of proceedings

18          in the above-entitled matter.

19

20  /s/  Michele E. Becker               Date:  12/23/2024

21

22

23

24

25